<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

```
-------------------------------------------------------X
DAVID WIRTH, et al.,                        :
                                            :
              Plaintiffs,                   :
                                            :
       v.                                   :
                                            :
TELCORDIA TECHNOLOGIES, INC.,               :
and SCIENCE APPLICATIONS                    :
INTERNATIONAL CORP.,                        :
                                            :
              Defendants.                   :
-------------------------------------------------------X
```

Civil Action No. 03-1929 (JAG)

<u>OPINION</u>

<u>GREENAWAY, JR., U.S.D.J.</u>

This matter comes before the Court on the motion of Defendants Telcordia Technologies,

Inc. ("Telcordia"), and Science Applications International Corporation ("SAIC") (herein

"Defendants") for summary judgment, pursuant to FED. R. CIV. P. 56(c). For the reasons set forth

below in this Opinion, this Court grants Defendants' motion.

<u>BACKGROUND</u>[1]

Plaintiffs David Wirth ("Wirth"), Elaine M. Londino ("Londino"), Cheryl L. Mills

("Mills"), and Marion Radeer ("Radeer") (collectively, "Plaintiffs") seek to be certified as a

class, pursuant to FED. R. CIV. P. 23. Plaintiffs are former employees of Defendants who were

---

[1]This Court treated Defendants' prior motion for summary judgment as a motion to dismiss. This Court granted the motion to dismiss, and granted Plaintiffs leave to amend the complaint, which they did in January 2004. Upon limited discovery (the exchange of some documents, and the deposition of the four named plaintiffs and two Telcordia representatives), Defendants filed the instant motion for summary judgment.

terminated in the fall of 2001, as part of a work force adjustment.[2]  (Amended Complaint dated January 16, 2004 ("Am. Compl."), at ¶¶ 2-7, 10-14.)  In conjunction with their termination, Plaintiffs signed Release Agreements (the "Releases") which included a non-exclusive list of seven statutory causes of action that were explicitly waived, but did not include claims under the Worker Adjustment and Retraining Notification Act ("WARN" or "the Act"), 29 U.S.C. § 2101. (Am. Compl. ¶ 37.)  Plaintiffs claim that, pursuant to WARN, they were entitled to 60 days notice prior to their termination but in fact only received several days notice.  (Am. Compl. ¶¶ 24, 27.)

In addition, Plaintiffs claim that Defendants violated the notice requirements of WARN by providing false and misleading information to the State of New Jersey, Department of Labor ("DOL") (which was publicized on its website), and to their employees concerning: (1) the status of the Piscataway campus as three separate sites as opposed to one single site of employment; (2) the actual number of employees terminated in Piscataway; and (3) the time frame of those terminations (during the months of September, October, November, and December of 2001). (Am. Compl. ¶¶ 26, 53.)

Plaintiffs allege that in September of 2001, Telcordia posted misleading information on its in-house website in the "Frequently Asked Questions" section on the force adjustment program.  (Am. Compl. ¶ 34.)  Specifically, Plaintiffs allege that all Telcordia employees were advised that "Telcordia was not required to provide sixty days notice for the lay-offs during the

---

[2]The Amended Complaint defines the class as "all Telcordia employees whose employment with Telcordia was terminated in violation of their rights [,] pursuant to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* ("the WARN Act"), including their right to receive 60 days' notice of a mass layoff, and numbers approximately 880 persons."  (Am. Compl. ¶ 2.)

period of September through the end of December," and further allege that this information was provided precisely to mislead employees being laid off during this time period.  (Am. Compl. ¶ 34.)

Plaintiffs further allege that they and similarly situated employees laid off by Telcordia in September, October, November, and December of 2001, were advised by Telcordia through their direct managers and by members of Telcordia's Human Resources Department, that Telcordia did not exceed WARN thresholds (i.e., less than 500 employees were being laid off), and that Plaintiffs and those similarly situated were not entitled to 60 days paid notice.  (Am. Compl. ¶ 35.)

Specifically, Plaintiffs allege that Radeer and numerous other employees terminated during this time raised questions concerning the 60 day notice issue, and that Telcordia consistently told these employees that they were not entitled to 60 days notice based on how the layoffs were structured.  (Am. Compl. ¶ 36.)  Radeer received a letter from Carol Cole ("Cole"), Vice-President of Telcordia's Human Resources, dated October 19, 2001, in response to her questions regarding WARN, which specifically stated: "[w]e are very familiar with the WARN Act and, if the requirements of the WARN Act are triggered, the Company will certainly comply with it.  We have been analyzing the Telcordia data on an ongoing basis to ensure the Company's compliance."  (Am. Compl. ¶ 36.)  Plaintiffs allege that at the time the letter was written, WARN had been triggered because 605 employees were in the process of being terminated.  (Am. Compl. ¶ 36.)  Subsequently, Radeer posted this letter in full on a website for former Telcordia employees, and via this website the letter was disseminated to other similarly situated persons. (See Transcript of Proceedings September 9, 2005 ("Tr."), at 2:12-23.)

3

Plaintiffs also allege that they were advised that, if they did not sign and return the Releases within 45 days or if they revoked the Release after signing it, they would be involuntarily terminated without their pension separation allowance or other Force Adjustment benefits.  (Am. Compl. ¶ 41.)  Plaintiffs claim that they signed the Releases in reliance upon Defendants' misrepresentations concerning compliance with WARN, and under threat of involuntary termination and loss of proffered benefits.  (Am. Compl. ¶ 42.)  Plaintiffs allege that, had they remained employed during the 60 day notice period, they would have been entitled to compensation for 60 additional days, and would have qualified for enhanced retirement and/or other benefits that Defendants made available to employees during that period.  (Am. Compl. ¶¶ 50-51.)  Plaintiffs seek compensatory and punitive damages as well as the relief set forth in 29 U.S.C. § 2104, which includes back pay, employee benefits, costs, and attorneys' fees.  (Am. Compl. ¶¶ 56-58, 59-60.)

Defendants filed the instant motion for summary judgment on December 3, 2004,[3] on the grounds that Plaintiffs executed valid Releases, and no genuine issue as to a material fact exists as to whether Defendants fraudulently induced Plaintiffs to sign the Releases.  (Defs.' Mem. of Law 2-3.)  Specifically, Defendants assert that there are no genuine issues as to a material fact as to whether Defendants ever made material misrepresentations of fact to employees, or that any of Defendants' statements could constitute misrepresentations, or that Plaintiffs ever actually relied on the alleged misrepresentations of fact.  (Defs.' Mem. of Law 6-10.)

---

[3]On December 3, 2004, the clerk's office received a cover letter indicating Defendants' intent to file the instant summary judgment motion.  However, due to some difficulty with filing, Defendants' motion and accompanying documents were actually filed on April 14, 2005 (although they are dated December 3, 2004).

The parties appeared before this Court on September 9, 2005, for oral argument.  The main focus of the argument revolved around the alleged misrepresentation in Cole's October 19, 2001 letter to Radeer.  (See generally Tr.)

## LEGAL STANDARDS

### A.   Standard of Review

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248.  The moving party must show that, if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  See Sound Ship Bldg. Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976).  At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but

5

rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  See Wahl v. Rexnord Inc., 624 F.2d 1169, 1181 (3d Cir. 1980).

**B.      The WARN Act**

The WARN Act prohibits employers from ordering a "mass layoff" until the end of a 60 day period after the employer serves written notice of such an order to: (1) a representative of the affected employees or, where there is no such representative, to the affected employees directly; and (2) a state entity (designated under this statute) and the local government entity within which such closing or layoff is to occur.  See 29 U.S.C. § 2102(a).[4]  The Act creates a cause of action for employees who are terminated by their employers in violation of § 2102, and provides that the remedies available under the Act are the exclusive remedies for any violations thereunder. See 29 U.S.C. § 2104(b).

A mass layoff is a reduction in force that is "not the result of a plant closing" and "results in an employment loss at a single site of employment during any 30-day period for: (i) at least 33% of the employees and at least 50 employees; or (ii) at least 500 employees."[5]

The Act further protects against employers who attempt to evade the 500-employees requirement by creating, in certain circumstances, a rebuttable presumption that a plant closing or "mass layoff" has occurred:

For purposes of this section . . . employment losses for 2 or more groups at a

---

[4]This statute does not apply to all employers.  Under the Act, an employer is "any business enterprise that employs (A) 100 or more employees (exclusive of part-time employees) or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week exclusive of overtime."  See 29 U.S.C. § 2101(a)(1).

[5]This definition excludes part-time employees.

single site of employment, each of which is less than the minimum number of employees specified in § 2101(a)(2) [relating to plant closings] or (3) [relating to mass layoffs] of this title but which in aggregate exceed that minimum number, and which occur within any 90-day period shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter.

29 U.S.C. § 2102(d) (emphasis added).

Federal regulations provide guidance as to what may count as a "single site of employment" (herein "single site") for purposes of the Act.  See 20 C.F.R. § 639.3(i)(1)-(8).  A single site can refer to "either a single location or a group of contiguous locations."  20 C.F.R. § 639.3(i)(1).

Generally, sites at least must be contiguous or in immediate proximity to each other to qualify as a "single site," but there are other relevant variables that should be considered–namely, whether purported "sites" share employees, management, and equipment, manufacture the same products, or conduct the same operations.  Thus, contiguous buildings owned by the same employer but which have separate management, produce different products, and have separate workforces are considered separate sites.  See 20 C.F.R. § 639.3(i)(5).

In addition, non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site.  See 20 C.F.R. § 639.3(i)(4) (stating that assembly plants located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers); Salyer v. Universal Concrete Products, No. C-2-90-0187, 1990 WL 455190 (S.D. Ohio, May 22, 1990) (two non-contiguous buildings on the same property are separate sites of employment where they produced different products, used different equipment, had separate employees, and did not share employees).

7

Furthermore, separate buildings or areas that are not connected or in immediate proximity may still qualify as a single site "if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." See 20 C.F.R. § 639.3(i)(3) (emphasis added); see also Frymire v. Ampex Corp., 61 F.3d 757, 766 (10th Cir. 1995) (stating that proximity and contiguity are primary considerations, which may be rebutted by managerial, operational, or labor variables).

Even where buildings are separate but close to each other, courts have reiterated the relevance of other factors before drawing conclusions about whether discrete buildings comprise a "single site." See Frymire, 61 F.3d at 766.

## DISCUSSION

Defendants assert that they are entitled to summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, because no genuine issue as to a material fact exists as to whether Defendants fraudulently induced Plaintiffs to sign the Releases.  Upon review of the parties' submissions, and having heard oral argument, this Court agrees.  Defendants' motion for summary judgment is granted.

Plaintiffs argue that Defendants engaged in a pattern and practice of deception and misrepresentation, regarding their obligations pursuant to the WARN Act.  (Pls.' Opp'n 3.) Plaintiffs further argue that they relied on the misinformation disseminated by Defendants, and were fraudulently induced into signing the Releases.  (Pls.' Opp'n 3.)  Plaintiffs argue that Defendants made several material misrepresentations of fact which fraudulently induced them to sign the Releases.  These include: 1) misrepresenting the Piscataway site to the DOL and to Defendants' employees as three separate sites of employment; 2) underreporting and misreporting the number of employees terminated in the Piscataway site between September 1,

8

and December 31, 2001; and 3) intentionally providing specific misleading information to employees when they inquired regarding their legal rights and the lack of sixty days notice. Specifically, Plaintiffs contend the misleading information was: a) an October 22, 2001 email from Telcordia's President and Chief Operating Officer Harold C. Smith to all Telcordia employees (hereinafter "the October 22, 2001 email"); b) the October 19, 2001 letter from Cole to Radeer; c) Telcordia's "Frequently Asked Questions" section on its website; d) direct information provided to employees by management and human resources; and e) knowingly allowing inaccurate information to be published and/or to remain on the DOL's website, knowing employees would rely on the information to ascertain their legal rights.  (Pls.' Opp'n 3-4.)  In essence, Plaintiffs argue that collectively, this series of misrepresentations meets the standard of equitable fraud,[6] because Plaintiffs relied on all of these misrepresentations in signing the Releases.

 Under New Jersey law, in order to prove equitable fraud, a plaintiff must prove that a defendant made a material misrepresentation of a presently existing or past fact, "with intent that it be relied on, coupled with actual detrimental reliance."  See Nolan v. Ho, 577 A.2d 143, 146 (N.J. 1990).

 For the purposes of this motion, this Court will begin its discussion with the October 19, 2001 letter from Cole to Radeer, and then address the other four instances of purported "specific

---

[6]Plaintiffs' Amended Complaint alleges only one cause of action, "Cause of Action for Violation of Warn Act."  (Am. Compl. ¶¶ 14-60.)  In essence, Plaintiffs allege that Defendants violated WARN by improperly designating Piscataway as three separate sites of employment instead of as a single site, then misrepresented their compliance with WARN to Plaintiffs, who in turn relied on those misrepresentations in signing Releases of any and all claims against Defendants.  At oral argument, Plaintiffs clarified their reliance on equitable fraud as the manner and means of supporting their claim that the Releases (as to WARN Act claims) were invalid.  (See generally Tr.)

misleading information," as well as the purported material misrepresentations Defendants made to the DOL.

The parties do not dispute that the October 19, 2001 letter came directly from Defendants. The letter was written by Cole, Telcordia's Vice President of Human Resources, and sent directly to Radeer.[7]   The letter stated, in relevant part, "[w]e are very familiar with the WARN Act and, if the requirements of the WARN Act are triggered, the Company will certainly comply with it. We have been analyzing the Telcordia data on an ongoing basis to ensure the Company's compliance."  (Affidavit of Steven D. Cahn dated April 14, 2005 ("Cahn Aff."), at ¶ 13, Ex. K.) Defendants even concede that Telcordia made the statement to Radeer with the intent that she rely upon it.  (Tr. at 10:15-17.)

The critical factor to resolve here, is whether there is a genuine issue as to a material fact as to whether Cole's statement constitutes a material misrepresentation of a presently existing or past fact.  In order for Plaintiffs to show that there is a genuine issue as to a material fact as to whether Cole's statement constitutes a material misrepresentation, Plaintiffs must present evidence demonstrating that as of October 19, 2001, Telcordia knew that WARN had been triggered, yet represented otherwise in the letter to Radeer.

Plaintiffs argue that Cole's statement constitutes a material misrepresentation because the statement can only be interpreted to mean that at the time the letter was written, Telcordia's position was that WARN had not been triggered, when in fact, it had.  (Tr. at 7:4-13; 51:1-2.) Plaintiffs also argue that the statement indicates that Defendants had complied with WARN, when in fact, they had not.  (Tr. at 4:18-25; 5:1-6.)  The essence of Plaintiffs' argument is that

---

[7]The letter was sent to Radeer in her capacity as an individual employee, not as an employee representative.  (Tr. at 18:14-19.)

Cole's statement constitutes a material misrepresentation because Defendants were aware that WARN applied to the layoffs at the Piscataway site at the time Cole wrote the letter, yet represented to Radeer that: a) WARN had not been triggered, and b) Telcordia was in compliance with WARN.

In support of their argument, Plaintiffs point to Defendants' alleged improper site designation as evidence that Telcordia knew on October 19, 2001, that the WARN Act had been triggered.  (Tr. at 12:18-25; 13:1-2; 14:16-18; 15:15-20.)  Despite this assertion, Plaintiffs actually concede that they have no direct evidence that Defendants intentionally tried to circumvent the WARN Act, only that Defendants ignored it.  (Tr. at 15:13-15.)

Defendants argue that everything in the record suggests that as of October 19, 2001, Telcordia did not believe that the WARN Act had been triggered.  (Tr. at 11:12-25; 12:1-2; 43:15-17.)  Defendants further argue that Cole's statement was merely a statement of an intent to do something in the future (i.e., comply with WARN) (Defs.' Reply Mem. 12), and that there is no evidence in the record indicating that Telcordia would not have complied if WARN had been triggered.  (Tr. at 43:17-19.)  Defendants contend that even if Telcordia was wrong regarding the legal interpretation of Piscataway's site designation, such a mistake does not constitute evidence of a material misrepresentation of a presently existing fact.  (Tr. at 53:6-11.)

Plaintiffs have not pointed to any evidence in the record that demonstrates that as of October 19, 2001, Defendants believed WARN had been triggered, yet represented otherwise in their letter to Radeer.[8]  Furthermore, Plaintiffs have conceded that they have no direct evidence

_____

[8]This Court notes that whether Defendants had actually complied with WARN by October 19, 2001, is not relevant to the summary judgment inquiry.  In order to survive Defendants' motion for summary judgment, Plaintiffs must demonstrate that Defendants made a material misrepresentation regarding their compliance with WARN (i.e., Defendants represented

that Defendants intentionally tried to circumvent the WARN Act.  In order to oppose Defendants' motion, Plaintiffs must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations of their pleadings.  See Sound Ship Bldg. Co., 533 F.2d at 99.  Plaintiffs have failed to set forth specific facts showing a genuine issue for trial as to whether Cole's statement constitutes a material misrepresentation.

Under the same general analysis, Plaintiffs' four other instances of purported "specific misleading information" (i.e., the October 22, 2001 email, Telcordia's "Frequently Asked Questions" section on its website, direct information provided to employees by management and human resources, and knowingly allowing inaccurate information to be published and/or to remain on the DOL's website), all fail to constitute material misrepresentations.  As with Cole's letter to Radeer, the critical factor to resolve is whether there is a genuine issue as to a material fact as to whether any of the above instances of purported "specific misleading information," constitute a material misrepresentation of a presently existing or past fact upon which Plaintiffs actually relied in signing the Releases.

This Court will address each instance separately.  First, Plaintiffs present no evidence pointing to a material misrepresentation in the October 22, 2001 email.[9]  The purpose of the

_____

compliance when in fact they knew that they were not in compliance), and Plaintiffs actually relied on that misrepresentation to their detriment (i.e., in signing the Releases).

[9]The October 22, 2001 email stated in relevant part:

These are exceptionally difficult times, and the market demand and our financial prospects change dramatically and rapidly.  Telcordia must continue to act quickly to control costs wherever possible and to bring our staffing levels in line with current and projected work demand.

Many employees are facing force adjustment at this time, and contrary to what Telcordia was able to do in other situations, we now are only able to give one

email was to inform employees that in contrast to past situations, Telcordia could no longer offer the same notice period due to the need to curtail costs.  (<u>See</u> Cahn Aff. ¶ 10, Ex. H.)  Plaintiffs fail to present any facts showing a genuine issue as to a material fact as to whether the October 22, 2001 email contains any material misrepresentations upon which Plaintiffs actually relied in signing the Releases.

Second, Plaintiffs fail to explain or present evidence indicating how any portion of Telcordia's "Frequently Asked Questions" section constitutes a material misrepresentation. Plaintiffs only appear to be concerned with the response to the first question regarding the lack of sixty days notice (Pls.' Counter-Statement of Facts ¶ 70):

> Question 1: Why am I leaving payroll so quickly; why don't I get 60 days on payroll like others have received?
>
> Answer 1: The current state of the business requires that we separate employees from payroll as quickly as possible.

(<u>See</u> Cahn Aff. ¶ 14, Ex. L.)

There is no dispute that Defendants repeatedly stated that their business was suffering, and that they needed to curtail costs as rapidly as possible.  Such a statement is not a material misrepresentation.  Yet, Plaintiffs argue that this somehow constitutes an instance of "specific misleading information," without any explanation as to how.  Furthermore, Plaintiffs fail to present any facts showing a genuine issue as to a material fact as to whether Telcordia's

---

week paid time on the payroll before termination.  (<u>Force Adjustment & Pay Reduction FAQs</u>)  This shortened notice period, consistent with our revised force adjustment policy that goes into effect January 1, is required because of the urgent need to curtail costs as rapidly as possible.  We will continue to offer the existing separation allowance benefit for the remainder of this year.

(Cahn Aff. ¶ 10, Ex. H.)

"Frequently Asked Questions" section contains any material misrepresentations upon which Plaintiffs actually relied in signing the Releases.

Third, Plaintiffs fail to specify what other "direct information provided to employees by management and human resources," they rely upon, aside from the instances discussed above.  At oral argument, Plaintiffs argued that they relied on the fact that their direct supervisors told them exactly the same thing as in Cole's letter to Radeer.  (Tr. at 22:19-23.)  As discussed above, nothing in Cole's letter to Radeer constitutes a material misrepresentation.  Therefore, if "direct information provided to employees by management and human resources," purports to refer to these alleged statements by Plaintiffs' direct supervisors, such statements cannot constitute material misrepresentations.

Finally, Plaintiffs fail to present evidence demonstrating how the purported inaccurate information on the DOL's website constitutes a material misrepresentation.[10]  Plaintiffs assert that Defendants engaged in fraudulent behavior because they knowingly allowed inaccurate information to be published and/or to remain on the DOL's website, knowing employees would rely on the information to ascertain their legal rights.  Plaintiffs support this argument by citing the fact that during the course of discovery, Defendants admitted that the DOL's website was relied upon by employees, and that the posted data was incorrect.  (Pls.' Opp'n 18; Cole Dep. attached as Ex. F to Cahn Aff. ("Cole Dep."), at 134:6-23; 137:23-25; 138:1-19; 139:5-8.)  However, Plaintiffs fail to explain how inaccurate information on the DOL's website is a material misrepresentation made by the Defendants.  Defendants argue that they consistently

_____

[10]Defendants provided five letters (the first dated May 10, 2001, and the last dated December 10, 2001) to the DOL with their layoff figures.  The May 10 letter provided the initial numbers of affected employees, the following letters provided cumulative figures.  (Cahn Aff. ¶ 12, Ex. J.)  The DOL then posted these figures on their website.

provided correct information regarding Telcordia's layoffs to the DOL, and had no control over the DOL's operation of its website.  (Defs.' Reply Mem. 14.)  Furthermore, Plaintiffs fail to present any facts showing a genuine issue as to a material fact as to whether the purported inaccurate information on the DOL's website constitutes a material misrepresentation upon which Plaintiffs actually relied in signing the Releases.[11]

Plaintiffs have also asserted that Defendants' representation of the Piscataway site to the DOL, and to Defendants' employees as three separate sites of employment, constitutes a material misrepresentation.  Defendants argue that Telcordia first categorized Piscataway as "sites of employment" for purposes of affirmative action reporting to the Office of Federal Contract Compliance Programs, and to be consistent, Telcordia used this same site designation for WARN reporting purposes.  (Defs.' Reply Mem. 4.)  Defendants argue that they had a reasonable basis for their interpretation of the appropriate site designation under WARN.  They further argue that even if Telcordia was wrong in designating Piscataway as separate sites of employment, this does not approach the level of fraud.  (Defs.' Reply Mem. 6.)  Plaintiffs have presented no evidence demonstrating that at the time Telcordia designated Piscataway as separate sites of employment, they did so in order to circumvent the WARN Act.  In fact, Plaintiffs have conceded that they have no direct evidence that Defendants intentionally tried to circumvent the WARN Act, only

---

[11]In fact, Plaintiffs Radeer and Londino admit that they concluded that the layoff numbers posted for Telcordia on the DOL's website were inaccurate before they signed the Releases (Radeer Dep. attached as Ex. H to Aff. of David J. Reilly (Reilly Aff.") at 50:4-18; Radeer Dep. attached as Ex. E to Supplemental Aff. of David J. Reilly ("Reilly Supp. Aff.") at 71:11-74:20; Londino Dep. attached as Ex. C to Reilly Supp. Aff. at 26:23-28:15), and Plaintiff Mills did not even look at the DOL website until January 2002, after she signed her Release agreement.  (Mills Dep. attached as Ex. E to Reilly Aff. at 23:22-24; Mills Dep. attached as Ex. B to Reilly Supp. Aff. at 45:7-51:22.)  Therefore, even if Plaintiffs had presented evidence of a material misrepresentation here, the evidence in the record does not support a finding of actual detrimental reliance.

that they believe Defendants ignored it.  (Tr. at 15:13-15.)  Plaintiffs fail to present any facts showing a genuine issue as to a material fact as to whether Defendants' categorization of the Piscataway campus constitutes a material misrepresentation upon which Plaintiffs actually relied in signing the Releases.

Finally, Plaintiffs assert that Defendants' purported improper reporting of the number of employees terminated in the Piscataway site between September 1, and December 31, 2001, constitutes a material misrepresentation.  Defendants argue that Telcordia provided the DOL with running cumulative figures for layoffs at each of its five New Jersey sites of employment, by letters commencing May 10, 2001, and that these figures were accurate.  (Defs.' Reply Mem. 8-10; Cahn Aff. ¶ 12, Ex. J.)  Plaintiffs have produced four DOL notices that do not accurately reflect the numbers of layoffs effective during the months of September, October, November, and December 2001 at Telcordia.  (Defs.' Reply Mem. 9; Cahn Aff. ¶ 17, Ex. O.)  It is clear that some inconsistencies exist regarding the number of layoffs Defendants reported, and the DOL 's subsequent handling of those figures.  What is not clear is how these inconsistencies, assuming they could even be attributed to Defendants, would rise to the level of fraud.  Plaintiffs have failed to provide any evidence showing how any purported inaccuracies in Defendants' reporting would constitute a material misrepresentation upon which Plaintiffs actually relied in signing the Releases.

Plaintiffs have failed to set forth specific facts showing a genuine issue for trial as to whether any of the above purported misrepresentations constitute a material misrepresentation upon which Plaintiffs actually relied in signing the Releases.  Such a failure is fatal to their

claim.[12]  In the absence of a sustainable claim for equitable fraud, Plaintiffs' entire Amended

Complaint falls subject to the grant of summary judgment.

## **CONCLUSION**

For the reasons set forth above, this Court grants Defendants' motion for summary

judgment.


Dated: January 11, 2006

                     S/Joseph A. Greenaway, Jr.           
                     JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[12]Plaintiffs have failed to make the requisite showing of fraud or misrepresentation necessary to rebut the conclusive presumption that Plaintiffs knowingly, and willingly signed the Releases.  Van Houten Svc., Inc. v. Shell Oil Co., 417 F. Supp. 523, 527 (D.N.J. 1975) (The general rule in New Jersey is that "where a party affixes his signature to a written instrument, such as a release, a conclusive presumption arises that he or she read, understood, and assented to its terms and will not be heard to complain that the effect of the act of signing was not comprehended . . . .  There is an exception, however, where there is a showing of fraud, misrepresentation or over-reaching by the releasee, or a showing that the releasor was suffering from an incapacity affecting his ability to understand the meaning of the release or on any other equitable ground.") (internal citations omitted).  Plaintiffs neither argue nor present any evidence of incapacity.  Therefore, further discussion of the validity of the Releases is unnecessary.